IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, and AIRLINE MECHANIC AND RELATED EMPLOYEE ASSOCIATION TWU/IAM,<br><br>    Defendants. | Civil Action No. 4:19-CV-00414-A |



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 14 2019
CLERK, U.S. DISTRICT COURT
By_____
      Deputy

**TEMPORARY RESTRAINING ORDER**

THIS MATTER came before the Court on the Motion for a Temporary Restraining Order filed by Plaintiff American Airlines, Inc. ("American"). After reviewing the motion papers, the Court finds:

1.   American seeks to restrain and enjoin the Transport Workers Union of America, AFL-CIO ("TWU"), International Association of Machinists and Aerospace Workers ("IAM"), and Airline Mechanic and Related Employee Association TWU/IAM ("Association"), (collectively with TWU and IAM, the "Union"), which represent the mechanics and related employees at American, and their members, agents, and employees, and all persons and organizations acting by, in concert with, or through or under them, or by and through them or their orders, including, but not limited to, their local unions, from calling, permitting, instigating, authorizing, encouraging, participating in, approving, or continuing any form of interference

1

with American's airline operations in violation of Section 2, First of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA").

2. American is a "common carrier by air" as defined in the Federal Aviation Act of 1958, and a "carrier" as defined by the RLA. The Association is the certified bargaining representative of the mechanics and related classification of employees at American. The Association has designated IAM and/or TWU and/or its or their affiliates to represent American's mechanics and related employees for contract administration and for other representation purposes at American's stations, bases or facilities.

3. Based upon American's filings—including its Complaint, Motion for a Preliminary Injunction, Memorandum of Law in Support of Motion for a Preliminary Injunction, Appendix in Support of American's Motion for a Preliminary Injunction, Motion for TRO, Memorandum of Law in Support of Motion for TRO, and Appendix in Support of American's Motion for a TRO—a TRO is warranted because American is likely to succeed on the merits of its claims that the Union is violating Section 2, First of the RLA.

4. As the Union concedes, a showing of irreparable injury is not required for issuance of an injunction for violation of Section 2, First of the RLA. (Defs.' Response in Opp. to Pl.'s Mot. for a Prelim. Injunction & Supporting Br. at 18 n.3); *see also Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303 (1989); *S. Ry. Co. v. Bhd. of Locomotive Firemen & Enginemen*, 337 F.2d 127, 133 (D.C. Cir. 1964); *United Air Lines, Inc. v. Int'l Ass'n of Machinist & Aerospace Workers, AFL-CIO*, 243 F.3d 349, 362-64 (7th Cir. 2001).

5. Although an irreparable injury showing does not apply to injunctions under the RLA, additional and immediate, irreparable damage, injury, or loss will result to American before the scheduled trial on its request for a preliminary and/or permanent injunction can be

had. In addition, large numbers of the traveling public are likely to be deprived of transportation services, causing serious and substantial damage to the public interest. In addition, it appears that unless such activity is restrained, American will suffer immediate and irreparable damage in the form of damage to its business reputation and customer goodwill, none of which may be recoverable from the Union and much of which can never be recovered.

6. The Court further finds that if the TRO is issued, the injury, if any, to the Union if final judgment be granted in their favor, will be inconsequential when compared with the loss and hardship that American, its customers, and the public will suffer if the TRO is not issued because the TRO merely requires the Union to satisfy its existing legal obligations, and, furthermore, that any such injury suffered by the Union will be adequately indemnified by bond.

THEREFORE, for the reasons stated on the record,

IT IS ORDERED that the Union, and its members, agents, and employees, and all persons and organizations acting by, in concert with, through or under it, or by and through it or its orders, including, but not limited to, their affiliated and associated entities, and their local unions, are enjoined from calling, permitting, instigating, authorizing, encouraging, participating in, approving, or continuing any form of interference with American's airline operations, including, but not limited to, any slowdown, work to rule campaign, or any other concerted refusal to perform normal operations in violation of Section 2, First of the RLA. By way of further example, this includes, but is not limited to, refusing to accept overtime as they would in the normal course, refusing to accept field trips as they would in the normal course, failing to complete maintenance repairs as they would in the normal course, slowing down in the performance of their job duties, and any other action intended to cause aircraft to be out of service (and specifically to cause aircraft out of service at 7 a.m.) or otherwise to cause flight

3

delays or cancellations or interfere with American's operations, or threatening or intimidating any employee for accepting overtime or field trips or otherwise performing his or her job duties as he or she would in the normal course.

IT IS FURTHER ORDERED that the Union shall take all reasonable steps within its power to prevent the actions listed above, and to refrain from continuing such actions if commenced, including, but not limited to, the following:

    a.    Instructing all employees represented by the Union and employed by American to resume their normal working schedules and practices, and providing American a copy of all such instructions;

    b.    Notifying all employees represented by the Union and employed by American, by the most expeditious means possible, of the issuance, contents, and meaning of the TRO, and producing a copy of all such notices to American;

    c.    Including in such notice a directive from the Union to their members employed by American not to engage in any concerted refusal to perform normal operations, including, but not limited to, any slowdown, work to rule campaign, or any other concerted refusal to perform normal operations, including, but not limited to, refusing to accept overtime as they would in the normal course, refusing to accept field trips as they would in the normal course, failing to complete maintenance repairs as they would in the normal course, slowing down in the performance of their job duties, and any other action intended to cause aircraft to be out of service (and specifically to cause aircraft out of service at 7 a.m.) or otherwise to result in flight delays or cancellations or interfere with American's operations or in any way threatening or intimidating any employee for accepting overtime or field trips

4

or otherwise performing his or her job duties as he or she would in the normal course, to cease and desist all such activity, and to cease and desist all exhortations or communications encouraging same upon pain of fine, suspension, or other sanction by the Union;

d. Posting the notice described above on the Union's websites and social media accounts and providing American a copy of the notices; and

e. Distributing the contents of such notice through all non-public communication systems maintained by the Union, including any text message distribution lists, or similar systems, and providing a copy of the notice to American.

IT IS FURTHER ORDERED that the Union is prohibited from including in such notices (or distributing contemporaneously with such notices) any statements that its members might interpret as suggesting they should continue to engage in the previously-described conduct notwithstanding the TRO, including code words and:

a. Any assertion that the TRO does not prohibit individual employees from making voluntary decisions to engage in such actions; and

b. Any explanation of circumstances in which it would be appropriate or necessary for employees to engage in such actions prohibited by the TRO.

END OF PAGE 5

IT IS FURTHER ORDERED that the Union report to the Court by 10:00 a.m. on June 18, 2019, by sworn affidavit, the methods used by the Union to effect the notice described above to all its members and furnish to the Court copies of all notices required to be furnished to American by the Union under the TRO.

This TRO is issued on the condition that a bond be filed by American herein on or before 10:00 a.m. on June 17, 2019, in the sum of $50,000.00, and that the Union shall recover from American under said bond all loss, expenses, damages, and costs, including reasonable attorneys' fees in defense against this order, if any, suffered by them in the event that American does not succeed in this action.

SO ORDERED at 5:00 o'clock p.m., this 14th day of June, 2019.

JOHN McBRYDE
United States District Judge