U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 28 2019

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN AIRLINES, INC., §
§
    Plaintiff, §
§
VS. § NO. 4:19-CV-414-A
§
TRANSPORT WORKERS UNION OF §
AMERICA, AFL-CIO, ET AL., §
§
    Defendants. §

## MEMORANDUM OPINION

Consistent with the instructions given to the parties at the recent pretrial conference, each side has filed a memorandum in support of its position on contested issues of law numbers 2, 3, 4, and 5 under the heading "Agreed List of Contested Issues of Law" in the Joint Pre-Trial Order the parties submitted to the court. Doc. 75.[1] Those issues read as follows:

> 2. Whether the requirements of Section[] 6 of the Norris LaGuardia Act apply to Plaintiff's claim against Defendants?
>
> 3. How the requirements of Section 8 of the Norris LaGuardia Act apply to Plaintiff's claim against Defendants? Specifically, does it require Plaintiff to attempt to make reasonable efforts to settle the dispute regarding the formulation of a joint collective bargaining agreement or the dispute regarding the alleged slowdown?
>
> 4. Whether Defendants have a legal obligation under Section 2, First of the [Railway Labor Act

---

[1] The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:19-CV-414-A.

("RLA")] to take all reasonable measures to stop concerted activity by their members if Defendants have not participated, authorized or ratified it?

 5. Whether Plaintiff is required to demonstrate that injunctive relief is the only practical and effective means of enforcing the Defendants' obligations under Section 2, First of the RLA?

Id. at 19-20.

The court has reached the following conclusions as to the proper answers to those legal issues:

Legal Issue No. 2 ("Whether the requirements of Section[] 6 of the Norris LaGuardia Act apply to Plaintiff's claim against Defendants?"):

> Section 6 of the Norris LaGuardia Act ("NLGA") provides:
>
>> No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.

Doc. 91 at 1.

While other courts might have reached contrary results, the Fifth Circuit in 1936 stated the following in its opinion in Mayo v. Dean, 82 F.2d 554, 556 (5th Cir. 1936):

> The contention that the injunction should not run against [the president and secretary of the union local whose members were acting in concert to prevent the unloading of a

2

> barge] is based on the provisions of section 6 of the act, 29 U.S.C.A. § 106. Again conceding, purely for the purpose of argument, that the act applies, the provision of the section is that no officer or member of any association participating or interested in a labor dispute shall be held responsible or liable in any court of the United States for the unlawful acts of any individual or officer, member or agent of the association except upon <u>clear proof</u> of actual participation in or actual authorization of such act or ratification of such act after actual knowledge thereof. <u>This might prevent punishment for contempt or the recovery of damages, but clearly was not intended to apply to the issuance of an injunction to prevent future acts of coercion in a case where such relief would be proper</u>.

Id. at 556 [emphasis added].

The court has been unable to find any Fifth Circuit decision that would cause Mayo no longer to be the law of the Fifth Circuit that this court is bound to apply, nor has the court seen any United States Supreme Court decision that would override the underlined language in the above-worded segment of the Mayo opinion.

The only Supreme Court decision the court is aware of that bears on Issue No. 2 is United Brotherhood of Carpenters v. United States, 330 U.S. 395, 403 (1947), in which the Supreme Court noted the following:

> Section 6 of the bill relates to damages for unlawful acts arising out of labor disputes. It is provided that officers and members of any labor organization, and officers and members of any employers' organization shall not be held liable for damages unless it is proven that the defendant either participated in or authorized such unlawful acts, or

3

ratified such unlawful acts after actual knowledge
thereof.

Id. n.11.

The Fifth Circuit does not stand alone in its interpretation of section 6. In Charles D. Bonanno Linen Service, Inc. v. McCarthy, 532 F.2d 189 (1st Cir. 1976), the First Circuit held that section 6 "applies only [by its own terms] to liability for damages or criminal responsibility." Id. at 191. In Suffolk Construction Co. v. Local 67, 736 F. Supp. 1179, 1182 (D. Mass. 1990), the district court of the District of Massachusetts, citing as authority the Charles D. Bonanno Linen Service case, said:

> Contrary to the defendants' assertions, the prohibition of § 6 of the Norris-LaGuardia Act, 29 U.S.C. § 106, does not apply to injunctions but only to claims for damages. Charles D. Bonanno Linen Service, Inc. v. McCarthy, 532 F.2d 189, 191 (1st Cir. 1976).

Id. at 1182.

For the reasons stated above, the court considers that the Fifth Circuit has left it no choice but to conclude that section 6 of the NLGA is not applicable to the request of plaintiff, American Airlines, Inc., for injunctive relief.

Legal Issue No. 3 ("How the requirements of Section 8 of the Norris LaGuardia Act apply to Plaintiff's claim against Defendants? Specifically, does it require Plaintiff to attempt to make reasonable efforts to settle the dispute regarding the

4

<u>formulation of a joint collective bargaining agreement or the dispute regarding the alleged slowdown?"</u>):

Section 8 of the NLGA provides:

> No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.

Doc. 91 at 3.

The court concludes that section 8 of the NLGA does not require plaintiff to attempt to resolve the slowdown that prompted plaintiff to file this action. Pertinent to this question is the following language used by the Seventh Circuit in <u>United Air Lines, Inc. v. International Association of Machinist</u>, 243 F.3d 349, 363 (7th Cir. 2001):

> IAM cites no authority (nor have we found any) for the proposition that a district court must deny a preliminary injunction against a recognized violation of a specific provision of the RLA by union members if it determines that the employer could "more effectively" curb the violation by directly disciplining or terminating individual employees. Indeed, such a suggestion runs counter to the spirit of the RLA's status quo provisions. As noted, those provisions impose an affirmative legal duty upon both employers <u>and unions</u> alike--which is enforceable by the courts--to preserve the status quo during the bargaining and mediation process imposed by the RLA. A union has the affirmative duty under the status quo provisions of the RLA to exert every reasonable effort to prevent or discourage a strike or a concerted work

5

action like the slowdown in this case. See, e.g., Delta Air Lines, 238 F.3d at 1308-10; see generally Shore Line, 396 U.S. at 152-53, 90 S. Ct. 294. Once a court determines that such a concerted work action is occurring in violation of the RLA, an injunction can issue ordering the union to observe its statutory duty by trying to stop it. See, e.g., Delta, 238 F.3d at 1308-10. Whether United can diminish or even stop the work slowdown through its own actions has nothing to do with the IAM's enforceable duty to do everything reasonable to end it.

Id. at 363. And, at a later point in the opinion:

Moreover, it seems clear in this case that an injunction would be the "sole, effective means" of enforcing the IAM's duties under the status quo provisions of the RLA. The district court concluded that a number of United mechanics were engaging in a deliberate and unlawful slowdown (or that a number of mechanics were "doing] job actions which are not proper" and acting "in concert" or in a "mob mentality"). This unilateral resort to self-help on the part of union members puts severe economic pressures on United, thereby undermining its bargaining position during the period of negotiation and mediation. This is precisely the kind of action that the RLA status quo provisions seek to prevent, and we cannot conclude that other remedies, short of an injunction, would be effective in doing so.

Id. at 365.

The court concludes that section 8 of the NLGA does not require plaintiff to make reasonable efforts to resolve the dispute regarding the alleged slowdown. See Atlas Air, Inc. v. International Brotherhood of Teamsters, 280 F. Supp. 3d 59, 85 (D. D.C. 2017).

Legal Issue No. 4 ("Whether Defendants have a legal obligation under Section 2, First of the [Railway Labor Act ("RLA")] to take

6

<u>all reasonable measures to stop concerted activity by their members if Defendants have not participated, authorized or ratified it?"</u>):

Section 2, First of the RLA provides:

It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions . . . in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. § 152, First.

That section imposes on unions an affirmative duty to take "every reasonable effort" to end their members' unlawful concerted activities. <u>Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l</u>, 238 F.3d 1300, 1310 (11th Cir. 2001); <u>United Air Lines, Inc. v. Int'l Ass'n of Machinist & Aerospace Workers</u>, 243 F.3d 349, 363 (7th Cir. 2001) ("<u>United v. IAM</u>"). A union bears that duty even if it did not participate in, authorize, or ratify its members' conduct. <u>Delta</u>, 238 F.3d at 1309-10 & n.22; <u>US Airways, Inc. v. U.S. Airline Pilots Ass'n</u>, 813 F. Supp. 2d 710, 731 (W.D.N.C. 2011); <u>United Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l</u>, No. 08-CV-4317, 2008 WL 4936847, at *36 (N.D. Ill. Nov. 17, 2008).

7

Defendants cited Section 6 of the NLGA, 29 U.S.C. § 106, in support of their position. That provision provides:

> No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.

Defendants argued that this provision supports their conclusion that a court cannot enjoin union members' concerted activity if the union did not participate in, authorize, or ratify the activity. Doc. 89 at 15. As stated above, however, the Fifth Circuit is committed to the proposition that Section 6 of the NLGA does not apply to actions for injunctive relief.

Even if it did, it would not bar the injunction plaintiff requests. An injunction requiring a union to take every reasonable effort to stop its members' conduct made unlawful by Section 2, First of the RLA would not hold it responsible for its members' conduct, but for its own failure to carry out its independent duty to try to stop their conduct. Moreover, the NLGA and RLA must be read together so that each statute's purpose is preserved. Bhd. of R.R. Trainmen v. Chicago River & Ind. R.R. Co., 353 U.S. 30, 40 (1957). The RLA's purpose is to "bring about stable relationships between labor and management," whereas the

8

NLGA's purpose is to "protect working men in the exercise of organized, economic power, which is vital to collective bargaining." Id. An injunction requiring defendants to try to end members' conduct made unlawful by Section 2, First of the RLA would not impair their ability to engage in lawful collective bargaining, but it would help stabilize relations between plaintiff and defendants and end any disruption to commerce caused by that conduct. Thus, such an injunction would promote the RLA's purpose without impairing that of the NLGA.

Defendants cited United v. IAM in support of their contention that they have no duty to take every reasonable effort to stop their members' concerted activity if they have not participated in, authorized, or ratified it, presumably because that case applied Section 6 of the NLGA. But, the court in United v. IAM only assumed without deciding that Section 6 of the NLGA applies to claims for injunctive relief. United Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l, 563 F.3d 257, 271 (7th Cir. 2009). As stated, it does not, and even if it did, it would not bar the injunction requested here. United v. IAM does not support defendants' position, and they cited to no case that does.

For those reasons, the court concludes that a union has a duty to take every reasonable effort to stop its members'

9

unlawful concerted activity, even if they have not participated in, authorized, or ratified it.

Legal Issue No. 5 ("Whether Plaintiff is required to demonstrate that injunctive relief is the only practical and effective means of enforcing the Defendants' obligations under Section 2, First of the RLA?"):

The Supreme Court has made it clear that a court may only enjoin a defendant's violation of Section 2, First of the RLA if an injunction "is the only practical, effective means of enforcing the duty to exert every reasonable effort to make and maintain agreements." Chicago & N.W. Ry. Co. v. United Transp. Union, 402 U.S. 570, 583 (1971). In its brief, plaintiff did not appear to raise a meaningful disagreement with that rule, but rather argued that its failure to discipline individual employees or engage in arbitration should not bar the injunction it requested. See doc. 91 at 7-8. That is not the question presented to the court, and the court will not resolve it here. Plaintiff may well argue that such discipline or arbitration is not a practical and effective means of enforcing defendants' duty, but it must meet the above-cited standard.

SIGNED July 28, 2019.

/s/ John McBryde
JOHN MCBRYDE
United States District Judge

10