IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, and AIRLINE MECHANIC AND RELATED EMPLOYEE ASSOCIATION TWU/IAM, <br><br> Defendants. | Civil Action No. 4:19-cv-00414-A |

**AMERICAN AIRLINES, INC.'S MOTION FOR CONTEMPT SANCTIONS**

Plaintiff American Airlines, Inc. ("American") moves this Court for a finding that Defendants Transport Workers Union of America, AFL-CIO ("TWU"), International Association of Machinists and Aerospace Workers ("IAM"), and Airline Mechanic and Related Employee Association TWU/IAM ("Association") (collectively, "Defendants") are in contempt of this Court's June 14, 2019 temporary restraining order, as modified by this Court on July 10, 2019 (the "TRO"). American seeks sanctions against Defendants in an amount, to be determined at a hearing, sufficient to compensate American for the losses caused by Defendants' violations of the TRO. In support of its Motion, American submits its memorandum of law and attached appendix, and states the following:

1. On June 14, American sought, and the Court issued, a TRO requiring Defendants to take all reasonable steps to stop the illegal slowdown and enjoining any interference with

American's operations. The TRO followed an orchestrated, concerted, illegal effort to disrupt American's operations that began in February and steadily escalated, even after American commenced this action. Defendants largely ignored the requirements of the TRO and the disruption continued to escalate. Three weeks later, American sought, and this Court issued, a modified TRO.

2. The modifications to the TRO proposed by American were carefully designed to advance Defendants' compliance efforts by specifically requiring Defendants' adoption of a commitment to compliance—"a sincere and emphatic respect for the requirements" of the TRO—and by requiring Defendants to take specific actions that would have ended the disruption if adopted and completed as required. The modifications also require the Unions to make all reasonable efforts to improve a key productivity measure that would quickly restore American's operation to normal. Despite American's daily advice to Defendants about performance generally, its frequent notice to Defendants about specific compliance failures, and the detailed roadmap included in American's response to Defendants' exaggerated and misleading compliance declarations, Defendants' defiance of the TRO continues.

3. Far from exerting every reasonable effort to stop the slowdown with sincere, forceful, and unequivocal messaging as required by the TRO, Defendants have orchestrated a thinly-veiled strategy of feigned compliance—messaging to their members that their communications are meant to appease the Court, not to persuade the members to end the slowdown. Nothing about Defendants' actions evinces a sincere desire to return American's operations to status quo. Indeed, the Fifth Circuit easily could have been referring to Defendants when it described similar union messages as "so lacking in authoritative forcefulness that [they] either [are] not heard at all ... or [are] discounted as being merely stage lines parroted for the

benefit of some later judicial review." *See American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 582 (5th Cir. 2000).

4. Defendants' lack in authoritative forcefulness starts at the top. Their senior leaders—Sito Pantoja, John Samuelsen and Alex Garcia—who are required under the modified TRO to personally and aggressively act to stop the disruption—have hardly engaged at all. In their videos and on the very few occasions that they personally stood in front of their members, they did little more than begrudgingly utter a few scripted words, all while making it abundantly clear that those words were required by the Court and were not their own. Their actions have sent an unmistakable signal to their members that the slowdown can continue. These hollow, insincere messages by the Defendants' senior leadership were mirrored by other Union leaders in virtually every interaction they undertook under the TRO with their members. And, further subverting these Court-ordered messages, Defendants have, in post-TRO communications to their members, openly denied that any slowdown has ever occurred, asserted that American management is to blame for the disruption to its operations, contended that the TRO is contrary to FAA safety requirements, and averred that the TRO was granted only because of American's lies.

5. Defendants' defiance of the TRO has resulted in the operational disruption continuing largely unabated. In the eight weeks since this Court issued the TRO, Defendants' continued illegal slowdown has caused over 950 flight cancellations and over 280 two-hour (or longer) delays, disrupting the lives of over 170,000 members of the public. But for Defendants' violations of the TRO, these over 1,230 maintenance-related cancellations and delays would not have occurred. Defendants' illegal activity—now twice ordered stopped by this Court—has

caused (and continues to cause) enormous hardship to American's customers and team members, enormous financial losses to American, and untold harm in lost customer goodwill.

6. The mandate set forth in Section 2, First of the RLA requiring carriers and unions and their members to "make and maintain agreements . . . [without] any interruption to commerce or to the operation of any carrier" has repeatedly been recognized as the heart and soul of the RLA. *See, e.g., Bhd. of R.R. Trainmen v. Jacksonville Term. Co.*, 394 U.S. 369, 377 (1969); *Chi. & N.W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 574-77 (1971). Defendants' continued affront to the TRO undermines not only this Court's authority, but the authority of federal courts to enforce the RLA. If allowed to continue, Defendants' illegal behavior would eviscerate and render meaningless Section 2, First, enabling Defendants to inflict devastating harm to American and the public, and suggest to other unions that they could undertake similar illegal efforts in future collective bargaining, all without penalty.

## CONCLUSION

For these reasons, and as detailed in the accompanying memorandum of law and attached Appendix, American respectfully requests that Defendants be held in contempt and that they be sanctioned in an amount, to be determined at a hearing, sufficient to compensate American for the losses caused by Defendants' violations of the TRO.

Respectfully submitted,



Dee J. Kelly, Jr. (S.B. # 11217250)
Lars L. Berg (S.B. # 00757072)
Elizabeth A. Cuneo (S.B. # 24100166)
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel.: (817) 332-2500
Fax: (817) 878-9280
dee.kelly.2@kellyhart.com
lars.berg@kellyhart.com
elizabeth.cuneo@kellyhart.com


Robert A. Siegel (*pro hac vice*)
Mark W. Robertson (*pro hac vice*)
Sloane Ackerman (*pro hac vice*)
Rachel S. Janger (*pro hac vice*)
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
Tel.: (212) 326-2000
Fax: (212) 326-2061
rsiegel@omm.com
mrobertson@omm.com
sackerman@omm.com
rjanger@omm.com

**ATTORNEYS FOR PLAINTIFF
AMERICAN AIRLINES, INC.**

## CERTIFICATE OF CONFERENCE

On August 13, 2019, I sent an email to, and held a telephone conference with, Jeff Bartos and Mark Richard, the two lead counsels for defendants, about this motion. Agreement could not be reached because their clients contend that they have complied with the injunctions American believes they violated.

Lars L. Berg

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of August, 2019, I filed the foregoing document with the clerk of the court and the electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

Lars L. Berg